THE HONORABLE JOHN C. COUGHENOUR

1
2
3
4
5
6
7                    UNITED STATES DISTRICT COURT
                   WESTERN DISTRICT OF WASHINGTON
8                           AT SEATTLE

9    JAHMEZ A. AMILI II and CHARLES A.        CASE NO. C13-1299-JCC
     CHAPPELLE II,
10                                            ORDER

11                        Plaintiffs,

12            v.

13   CITY OF TUKWILA, et al.,

14                        Defendants.

15        This matter comes before the Court on Plaintiffs' Motion for Partial Summary Judgment

16   (Dkt. No. 17) and Defendants' Cross Motion for Summary Judgment on the Fourth Amendment

17   Seizure Issue (Dkt. No. 23). Having thoroughly considered the parties' briefing and the relevant

18   record, the Court finds oral argument unnecessary and hereby GRANTS Plaintiffs' motion (Dkt.

19   No. 17) and DENIES Defendants' cross-motion (Dkt. No. 23) for the reasons explained herein.

20   I.    BACKGROUND

21        This case concerns Defendant Officer Zachary Anderson's stop and eventual arrest of

22   Plaintiffs in the early morning hours of May 12, 2012. Officer Zachary Anderson is a police

23   officer with the Tukwila Police Department. (Anderson Dep. 10–11 (Dkt. No. 18, Ex.1 at 6).)

24   Plaintiffs are African American brothers who were walking to their mother's house. (Dkt. No. 17

25   at 2.)

26        At approximately 2:40 a.m. on that day, officers received a 911 call about a reported fight

on a private party bas in the parking lot of the Southcenter Mall. (Dkt. No. 17 at 2; Dkt. No. 23 at 2.) Officer Anderson left the police station to drive toward the mall. (Dkt. No. 17 at 2; 23 at 3.) As Officer Anderson was driving, he saw Plaintiffs walking along an overpass. (Dkt. No. 17 at 2; Dkt. No. 23 at 3.) There was no sidewalk on the side of the road on which they were walking, although there was a sidewalk on the other side of the bridge. (Anderson Dep. 35:10–13 (Dkt. No. 25, Ex. B at 6).)

Officer Anderson made a U-turn and stopped his car on the other side of the overpass. (Dkt. No. 17 at 2; Dkt. No. 23 at 4.) He exited his car and told them that he was investigating a fight, that he needed them to come to his car, and that they weren't free to leave. (Dkt. No. 17 at 2; Dkt. No. 23 at 4.) Plaintiffs, using expletives, said that they hadn't done anything and refused to come to his car. (Dkt. No. 17 at 2–3; Dkt. No. 23 at 4–5.) They continued walking. (Dkt. No. 17 at 3; Dkt. No. 23 at 5.) Officer Anderson then informed Plaintiffs that they were under arrest for obstructing a law enforcement officer. *See* Wash. Rev. Code 9A.76.020(1). (Dkt. No. 17 at 3; Dkt. No. 23 at 5.) Officer Anderson pointed his taser gun at Plaintiffs from across the road. (Dkt. No. 17 at 3; Dkt. No. 23 at 6.) At this point, Officer Prasad arrived, followed seconds later by Officer Erik Kunsmann. (Dkt. No. 17 at 3; Dkt. No. 23 at 6.) Plaintiffs were then apprehended.

Plaintiffs filed this 42 U.S.C. § 1983 action on July 22, 2013 listing two causes of action: unconstitutional use of excessive force, and violations by the city and police chief. (Dkt. No. 1.) Both Plaintiffs and Defendants move for partial summary judgment on whether the initial seizure by Officer Anderson was unlawful. (Dkt. No. 17 at 2; Dkt. No. 23 at 2.) Whether excessive force was used is not an issue on summary judgment. (Dkt. No. 23 at 20.)

## II.   DISCUSSION

### A.   Standard on Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the case's outcome. *See Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if there is enough evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* at 49. At the summary judgment stage, evidence must be viewed in the light most favorable to the nonmoving party, and all justifiable inferences must be drawn in the nonmovant's favor. *See Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954, 960 (9th Cir. 2011).

### B.       Section 1983 Claims

Under 42 U.S.C. § 1983, a plaintiff may hold police officers personally liable for violations of the plaintiff's constitutional rights. The doctrine of qualified immunity, however, protects government officers "performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In determining whether an officer's actions are protected by qualified immunity, a court asks two questions in whatever order it chooses: "(1) whether the alleged misconduct violated a right and (2) whether the right was clearly established at the time of the alleged misconduct." *Maxwell v. County of San Diego*, 697 F.3d 941, 947 (2012).

### C.       Whether The Alleged Misconduct Violated A Right

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. On the record here, the Court must first determine when a seizure occurred and then determine whether that seizure was unreasonable.

#### 1.   *When the seizure occurred*

"[A] person is 'seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained." *United States v. Mendenhall*, 446 U.S. 544, 553 (1980). The parties disagree about when the encounter became a seizure. Plaintiffs contend they were seized when Officer Anderson ordered them to come to his car and told them that they were not free to leave. (Dkt. No. 17 at 9 (citing *Mendenhall*, 446 U.S. at 554 (seizure occurs once

1    "reasonable person would have believed that he was not free to leave"); *State v. Richardson*, 825

2    P.2d 754 (1992) (same).) Defendants argue that no Fourth Amendment seizure occurred "until

3    [Plaintiffs] were physically subdued by officers." (Dkt. No. 23 at 13 (citing *Mendenhall*, 446

4    U.S. at 553 (no seizure until "freedom of movement is restrained"); *Brendlin v. California*, 551

5    U.S. 249, 254 (2007) (absent "actual submission" there is only an "attempted seizure"); *United*

6    *States v. Smith*, 633 F.3d 889, 893 (9th Cir. 2011)). In Defendants' view, Plaintiffs evaded any

7    "effective seizure" until they were physically arrested, at which point their "active resistance"

8    contributed to the probable cause necessary for their arrest. (Dkt. No. 23 at 14.)

9            There is no dispute that Plaintiffs initially continued walking away from Officer

10   Anderson. There is also no dispute, however, that as they were walking away Officer Anderson

11   pointed a taser at them, told them to stop, and they stopped. (Prasad Dep. 43, 44:4–8 (Dkt. No.

12   25 at 7–8) (When Officer Prasad arrived, Officer Anderson was pointing a taser at Plaintiffs;

13   they were asked to stop several times; they stopped within "a few seconds" of Prasad's arrival).);

14   (Anderson Dep. at 64:10–18, 67 (Dkt. No. 25-2 at 3–4) (Plaintiffs "continued walking,"

15   Anderson "told them at that point that they were under arrest for obstructing a public servant,

16   and took [his] taser out," and decided to wait to make contact with them until other officers

17   arrived).) As described by Defendants: "To keep the men from simply walking away while he

18   waited for back-up officers to arrive, Officer Anderson took out his taser and held plaintiffs at

19   taser-point." (Dkt. No. 23 at 6, lines 2–4.) Even assuming that Officer Anderson's statement that

20   Plaintiffs were not free to leave did not constitute a seizure, they were effectively seized when

21   they stopped at his command while having a taser pointed at them. *Cf. Brendlin v. California*,

22   551 U.S. 249, 254 (2007) ("no seizure without actual submission"); *Mendenhall*, 446 U.S. at 555

23   (no seizure when DEA agents wore no uniforms, displayed no weapons, and issued no

24   commands); *United States v. Smith*, 633 F.3d 889, 892–93 (2011) (no seizure when suspect

25   engaged in "short verbal exchange" with officer before turning around and running away). The

26   question thus becomes whether this seizure was constitutional.

ORDER
PAGE - 4

1    *2. Reasonable Suspicion*

2         The parties agree that the reasonableness of the seizure depends on whether Officer

3    Anderson's seizure of Plaintiffs was a justified investigatory stop under *Terry v. Ohio*, 392 U.S.

4    1 (1968). (Dkt. No. 17 at 8; Dkt. No. 23 at 10–11 (citing *Terry* and *Florida v. Royer*, 460 U.S.

5    491 (1983), in stating "That is exactly what Officer Anderson was trying to do".).) "An

6    investigatory stop must be justified by some objective manifestation that the person stopped is,

7    or is about to be, engaged in criminal activity." *United States v. Cortez*, 449 U.S. 411, 417

8    (1981); *see also Terry*, 392 U.S. at 21 (recognizing government interest in "approach[ing] a

9    person for purposes of investigating possibly criminal behavior"). Courts must consider the

10   "totality of the circumstances" to determine whether the police officer had "a particularized and

11   objective basis for suspecting legal wrongdoing." *See United States v. Arvizu*, 534 U.S. 266, 273

12   (2002) (internal quotation marks omitted); *United States v. Thompson*, 282 F.3d 673, 678 (9th

13   Cir. 2002) ("[S]pecific, articulable facts . . . together with objective and reasonable inferences,

14   [must] form the basis for suspecting that the particular person detained is engaged in criminal

15   activity." (internal quotation marks omitted)).

16        The Court concludes that the totality of the circumstances here gave Officer Anderson no

17   reasonable basis for detaining Plaintiffs. Defendants rely heavily on Plaintiffs' apparent lack of

18   cooperation—i.e., their walking away—in arguing that Anderson had reasonable suspicion for

19   seizing them.[1] (Dkt. No. 23 at 12–14.) This reliance is misplaced. Although Defendants are not

20   entirely clear on this point, they argue that Plaintiffs were not initially seized (Dkt. No. 23 at 13),

21   which would suggest that Officer Anderson initiated the stop as a consensual encounter. *See*

22   *United States v. White*, 584 F.3d 935, 944–45 (10th Cir. 2009) ("[T]he Supreme Court has

23   recognized three types of police-citizen encounters: consensual encounters, investigative

24   detentions, and arrests."). During a consensual encounter, individuals may lawfully choose not to

25   _____

26        [1] The following analysis would apply regardless of whether the seizure occurred when
     Officer Anderson said they were not free to leave or when he had them stopped at taser-point.

ORDER
PAGE - 5

1    cooperate with a police officer, and that disregard does not create reasonable suspicion. *Florida*

2    *v. Bostick*, 501 U.S. 429, 437 (1991) ("We have consistently held that a refusal to cooperate,

3    without more, does not furnish the minimal level of objective justification needed for a detention

4    or seizure."); *Mendenhall*, 446 U.S. at 554 (no seizure "[a]s long as the person to whom

5    questions are put remains free to disregard the questions and walk away"); *United States v.*

6    *Smith*, 633 F.3d 889 (9th Cir. 2011) ("Had [Defendant] simply continued to go about his

7    business, or walked away [upon being commanded to stand in front of police car], [then the

8    police officer] would not have had reasonable suspicion to seize him."); *United States v. Fuentes*,

9    105 F.3d 487, 490 (9th Cir. 1997) ("Mere refusal to consent to a stop or search does not give rise

10   to reasonable suspicion or probable cause."). Even if the stop was initiated as an investigative

11   stop, Plaintiffs' interactions during the encounter would not contribute to the stop's

12   reasonableness, because reasonable suspicion must exist when the stop is initiated. *See United*

13   *States v. Thomas*, 863 F.2d 622, 625 (9th Cir. 1988) ("Founded suspicion must exist at the time

14   the officer initiates the stop.").

15        True, an individual's flight from police may contribute to an officer's reasonable

16   suspicion, *see Smith*, 633 F.3d at 893–94, but there is no suggestion that Plaintiffs attempted to

17   flee. By Officer Anderson's own description, Plaintiffs were walking northbound, and after

18   speaking with him, they "continued walking northbound." (Anderson Dep. at 64, 67 (Dkt. No.

19   25, Ex. B at 8).) "Flight, by its very nature, is not 'going about one's business,'" *Illinois v.*

20   *Wardlow*, 528 U.S. 119, 125 (2000), yet "going about their business" is precisely what Plaintiffs

21   continued doing. Defendants imply—although do not state explicitly and cite no case law in

22   support—that Plaintiffs' use of expletives is somehow relevant. (Dkt. No. 23 at 12.) The use of

23   expletives does not transform an otherwise-legal refusal to answer questions into the basis for a

24   legitimate *Terry* stop. *See United States v. Poocha*, 259 F.3d 1077, 1082 (2001) ("We have

25   repeatedly emphasized that 'while police, no less than anyone else, may resent having obscene

26   words and gestures directed at them, they may not exercise the awesome power at their disposal

1    to punish individuals for conduct that is not merely lawful, but protected by the First

2    Amendment.'" (citing *Duran v. City of Douglas*, 904 F.2d 1372, 1378 (9th Cir. 1990)).

3          The Washington obstruction statute does not change this analysis, nor do Defendants

4    suggest that it does. Instead, Defendants merely note "that the obstruction statute furnishes

5    authority for arrest *if an officer has the requisite reasonable suspicion*, and the subject refuses to

6    comply." (Dkt. No. 28 at 3 (emphasis added).) *See also State v. Barnes*, 978 P.2d 1131, 1136

7    (Wash. App. Div. 3, 1999) (statute requires citizens to comply with officers discharging lawful

8    official duties and "[a]n unlawful detention is by definition not part of lawful police duties"). The

9    Washington statute therefore does not assist this Court in assessing whether "requisite reasonable

10   suspicion" existed initially.

11         Having determined that Plaintiffs walking away could not contribute to the reasonable-

12   suspicion calculus, the next determination is what factors did contribute to that calculus. In

13   Defendants' words, considerations justifying Officer Anderson's actions are:

14
15   - Very late evening hours, close to 3 a.m.;
     - Plaintiffs' presence in the near vicinity to reported fight activity;
16   - Timing of plaintiffs' presence at location consistent with timing of report;
     - Plaintiffs walking away from, not toward, the reported fight location;
17   - No reports of others in area;
     - Fight activity reportedly associated with a 'party bus' raising possibility of
18     alcohol consumption;
     - Credible, self-identifying report party, mall security;
19   - Plaintiffs' presence on the fog line near the travel lane when a sidewalk
20     was available on the other side of the street;
     - 'Disarray' of plaintiffs' clothing consistent with possible involvement in a
21     confrontation.

22   (Dkt. No. 23 at 12.)

23         Several of these considerations deserve little or no weight. For example, at the time of the

24   incident, Officer Anderson did not know the identity of the person who reported the fight

25   (Anderson Dep. 42:13–22 (Dkt. No. 18, Ex. 1 at 14)), so the credibility of the reporting party is

26   irrelevant in considering whether there was an objective basis for reasonable suspicion, *see*

ORDER
PAGE - 7

1    *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (facts known by an officer are relevant in

2    determining whether probable cause existed); *Moreno v. Baca*, 431 F.3d 633, 639 (9th Cir. 2005)

3    (facts that could render a search reasonable are irrelevant if unknown to the officer at the time).

4    Next, the Court is perplexed by Defendants' ungrammatical statement: "[f]ight activity

5    reportedly associated with a 'party bus' raising possibility of alcohol consumption." Defendants

6    provide no reasoning to suggest how this general proposition—that party buses are generally

7    associated with alcohol consumption—could contribute to a particularized basis for suspecting

8    someone walking on a street of criminal activity. The undisputed evidence is that Officer

9    Anderson had no awareness of whether Plaintiffs had been consuming alcohol until he smelled

10   alcohol as he approached them, "moments before the takedown." (Anderson Dep. 22:25–23:3

11   (Dkt. No. 18, Ex. 1 at 9).) Any suspected alcohol use or connection to a party bus is therefore

12   irrelevant in considering the reasonableness of the seizure, which occurred when Officer

13   Anderson first held Plaintiffs at taser-point.

14       Turning to consideration of Plaintiffs' appearance, the Court notes that Anderson's

15   explanation of what he meant by "disarray of plaintiffs' clothing" is that "it appeared kind of

16   wrinkled, a little out of sorts. . . . kind of tussled in some sort of manner based on some of the

17   kind of wrinkles that I recall." (Anderson Dep. 53:5–8 (Dkt. No. 18, Ex. 1 at 16).) There is no

18   suggestion that the "disarray" included blood stains or tears, nor did Officer Anderson have any

19   information about identifying characteristics for any individuals involved. Neither do Defendants

20   suggest how the fact that Plaintiffs were not walking on the sidewalk demonstrates that they had

21   assaulted someone. Finally, although Plaintiffs' temporal and physical proximity is the strongest

22   factor in Defendants' favor, even that consideration's relevance is weakened somewhat by the

23   fact that the reported incident was on a moving bus, not at a fixed location like most "crime

24   scenes."

25       With these qualifications, Defendants' argument reduces to these observations: it was late

26   at night in an area that, like most areas at 3 a.m., did not have many people; Plaintiffs were in a

1 location and walking in a direction consistent with proximity to a reported fight on a bus; they

2 were not walking on the sidewalk; and their clothing was wrinkled. Considering all these factors

3 together, they do not suggest that Plaintiffs were engaged in criminal activity or were about to be

4 engaged in criminal activity. *Cortez*, 449 U.S. at 417–18. Even assuming that a report of a

5 "fight" would justify an officer searching for a perpetrator of an "assault," courts have repeatedly

6 rejected mere proximity or general appearance as the basis for a detention. *See, e.g.*, *Moreno*,

7 431 F.3d at 643 (nervous behavior and walking away from officers in a high-crime area did not

8 create "reasonable suspicion"); *United States v. Montero-Camargo*, 208 F.3d 1122, 1129 (9th

9 Cir. 2000) ("particularized suspicion" not satisfied by broad or general profiles); *Bradford v. City*

10 *of Seattle*, 557 F.Supp.2d 1189, 1198 (W.D. Wash. 2008) (no reasonable suspicion when a 911

11 call predicted a fight between teen groups and officer observed a young man jogging past the

12 patrol car wearing a colored shirt that could have identified him as being part of one group).

13 Proximity to a reported fight that occurred on a moving bus late at night does not create a

14 reasonable suspicion of criminal activity, even if an individual looks disheveled or "kind of

15 wrinkled."

16       **D.**    **Whether the Right Was Clearly Established**

17       Having concluded that Plaintiffs have established the violation of a constitutional right,

18 the Court next considers whether the right was clearly established. "Qualified immunity shields

19 an officer from suit when [he] makes a decision that, even if constitutionally deficient,

20 reasonably misapprehends the law governing the circumstances [he] confronted." *Brosseau v.*

21 *Haugen*, 543 U.S. 194, 198 (2004). The plaintiff bears the burden of demonstrating that the right

22 was clearly established. *See Collins v. Jordan*, 110 F.3d 1363, 1369 (9th Cir. 1997). Contrary to

23 Defendants' suggestion (Dkt. No. 23 at 20), there need not be a case with this precise factual

24 scenario in order to deny qualified immunity. *See Torres v. City of Madera*, 648 F.3d 1119, 1129

25 (9th Cir. 2011) ("[W]e have repeatedly stressed that officials can still have 'fair warning' that

26 their conduct violates established law 'even in novel factual circumstances[.]'" (citing *Hope v.*

1   *Pelzer*, 536 U.S. 730, 741 (2002)).

2          The relevant facts are undisputed, and the Court concludes that the law was clearly

3   established that this detention would be illegal. Courts are unequivocal—and have been for

4   decades—that there must be "a particularized and objective basis for suspecting legal

5   wrongdoing." *See United States v. Arvizu*, 534 U.S. 266, 273 (2002) (internal quotation marks

6   omitted); *Cortez*, 449 U.S. at 417–18 ("Based upon [the] whole picture the detaining officers

7   must have a particularized and objective basis for suspecting the particular person stopped of

8   criminal activity."); *Terry*, 392 U.S. at 22. Investigative stops are justified only if criminal

9   activity may be afoot—if the officer suspects "that the person stopped is, or is about to be,

10  engaged in criminal activity." *Cortez*, 449 U.S. at 417–18; *Navarette v. California*, 134 S. Ct.

11  1683, 1690 (2014) (quoting *Cortez*)). The reasons to suspect Plaintiffs of being criminals here,

12  however, were tenuous at best. *See, e.g.*, *Moreno*, 431 F.3d at 643 (nervous behavior and

13  walking away from officers in a high-crime area did not create "reasonable suspicion"). *United*

14  *States v. Hanson*, 138 Fed. App'x 39 at *2 (9th Cir. 2005) (no particularized suspicion when

15  defendants were in general area where two others had been attempting to smuggle marijuana:

16  "The remoteness of the area, the proximity to the border, and the early hour [were] insufficient to

17  justify the stop."). There was a non-specific report of a "fight" that identified no particular

18  individuals, and Plaintiffs' only connection to that nebulously criminal incident was proximity

19  and a general appearance of "disarray." Even Defendants do not suggest how these facts could

20  create a particularized suspicion that Plaintiffs were guilty of criminal activity. [2] Defendants

21  _____

22          [2] Although an officer's subjective intentions are irrelevant in determining whether a stop
    was objectively reasonable, even Officer Anderson did not think he had a basis for suspecting
23  them of criminal activity; he simply wanted to "talk with them and investigate what happened
    and their involvement and if they knew anything regarding the fight that happened nearby."
24  (Anderson Dep. 59:2–5 (Dkt. No. 18 Ex. 1 at 18).) Similarly irrelevant is Officer Anderson's
    subjective belief that he could stop Plaintiffs because they theoretically might have committed
25  property crimes. (Anderson Dep. 38:5–11, 40:17–24 (Dkt. No. 18, Ex. 1 at 13).) And although
    Anderson expressed concern for their safety in his deposition (Anderson Dep. 59:6–12 (Dkt. No.
26  18 Ex. 1 at 18)), Defendants do not suggest that this justified the stop.

1    merely list a set of factors—a number of which must be disregarded as described above—and

2    then focus on demonstrating that Officer Anderson's subjective determinations are irrelevant.

3    (Dkt. No. 23 at 12, 16.)

4            Defendants are correct that reasonable-suspicion inquiries are generally fact-specific.

5    Yet cases in which courts have concluded that reasonable suspicion exists always require

6    something more specific—such as a suspect who matches a reported description or acts in a

7    manner consistent with reported criminal activity—linking the individual to a crime. *See, e.g.*,

8    *United States v. Mayo*, 394 F.3d 1271, 1275 (9th Cir. 2005) (officers had reasonable suspicion

9    when officers responded to a call about "suspicious narcotics activity" and observed a sequence

10   of events suggesting a transaction involving suspect that occurred "in a high-crime area and in

11   front of a motel that hosted previous narcotics activity"); *Alexander v. County of Los Angeles*, 64

12   F.3d 1315, 1319 (9th Cir. 1995) (reasonable suspicion existed when witness gave specific

13   descriptions of suspects' clothing and vehicle); *United States v. Young*, No. 13-0149, 2014 WL

14   321160 at *8 (D. Nev. Jan. 29, 2014) (although a "close call," officers had reasonable suspicion

15   when suspect matched the physical description of a black male adult wearing a white t-shirt, and

16   the suspect was physically and temporally proximate to report of abandoned car, walking

17   quickly, and avoiding eye contact with police); *Gillis v. City and Cnty. of San Francisco*, No. 08-

18   3871-RS, 2011 WL 4404138 (N.D. Cal. 2011) (officers had reasonable suspicion when group of

19   three individuals were in an alley two blocks from where a mugging had been reported and bore

20   similarities to description of the three suspects); *United States v. Howell*, No. 06-260-JCC, 2007

21   WL 214259 (W.D. Wash. 2007) (reasonable suspicion when there was temporal and geographic

22   proximity to report of drug deal and individuals had similar clothing and were of the same race

23   as reported suspects). Here there was no description of any suspect, no specific criminal activity

24   identified, no suspicious behavior on the part of Plaintiffs, and only a general sense that

25   Plaintiffs' clothing was in "disarray." To suggest that qualified immunity is nonetheless available

26   is to suggest that qualified immunity will always protect an officer's reasonable-suspicion

1  determinations, no matter how ill-founded. *See Torres*, 648 F.3d at 1129 (test of whether right is

2  clearly established cannot be so narrow that qualified immunity is transformed into absolute

3  immunity).

4        Even assuming that Officer Anderson had an unarticulated gut instinct that Plaintiffs had

5  assaulted some unidentified individual—although there is no suggestion that he did or reasonably

6  could have—this suspicion alone would not have sufficed. As the Ninth Circuit has written:

7
        If there is one irreducible minimum in our Fourth Amendment jurisprudence, it is
8          that a police officer may not detain an individual simply on the basis of suspicion
        in the air. No matter how peculiar, abrasive, unruly or distasteful a person's
9          conduct may be, it cannot justify a police stop unless it suggests that some
        specific crime has been, or is about to be, committed, or that there is an imminent
10         danger to persons or property.

11 *Duran*, 904 F.2d at 1378.

12       Plaintiffs' detention does not implicate the tangled factual web of reasonable-suspicion

13 calculations. Instead, it reflects a fundamental misunderstanding about the limits of a police

14 officer's ability to bring the full force of the law to bear upon a person who is not reasonably

15 suspected of being involved in criminal activity.

16       **E.**    **Motion to Strike**

17       Defendants move to strike a court reporter's transcript on the basis that it is inadmissible

18 hearsay. (Dkt. No. 23 at 2 n.2.) The portion of the transcript to which Defendants object had no

19 relevance in this Court's decision so the Court declines to strike the transcript.

20 **III.**    **CONCLUSION**

21       Having thoroughly considered the parties' briefing and the relevant record, the Court

22 finds oral argument unnecessary and hereby GRANTS Plaintiffs' motion (Dkt. No. 17) and

23 DENIES Defendants' cross-motion (Dkt. No. 23) for the reasons explained herein.

24 //

25 //

26

1    DATED this 10th day of July 2014.

2

3

4

5

6

7

8                                              John C. Coughenour
                                               UNITED STATES DISTRICT JUDGE
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER
PAGE - 13